IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Planned Parenthood of South Carolina, Inc., )<br>and Renee Carter, )<br>       Plaintiffs, )<br>)<br>vs. )<br>)<br>B. Boykin Rose, Director of Department of )<br>Public Safety; Gary D. Maynard, Director of )<br>Department of Corrections; and Elizabeth G. )<br>Patterson, Director of Department of Social )<br>Services, in their official capacities, )<br>       Defendants. )<br>_____) | C.A. No. 2-01: 3571<br>**ORDER** |

This matter is before the court upon Planned Parenthood Health System Inc.'s ("Planned Parenthood") Motion for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988. For the reasons set forth herein, Planned Parenthood's motion is granted in the amount of $157,810.06.

## BACKGROUND

In this lawsuit, Plaintiffs challenged a South Carolina statute (hereinafter "the Act") which authorized a specialty license plate imprinted with the words "Choose Life." A comparable plate with a pro-choice message was not available. Accordingly, Plaintiffs claimed that the Act violated the First Amendment because it amounted to viewpoint discrimination by the State. This court agreed and declared the statute unconstitutional. *See Planned Parenthood of S.C., Inc. v. Rose,* 236 F.Supp.2d 564 (D.S.C. 2002). Defendants appealed, and the Fourth Circuit Court of Appeals affirmed this court's ruling. *See Planned Parenthood of S.C., Inc. v. Rose,* 361 F.3d 786, 788 (4th Cir. 2004). Defendants then filed a petition for a writ of certiorari. The Supreme Court denied Defendants' petition on January 24, 2005. *See Rose v. Planned*

*Parenthood,* 125 S.Ct. 1036 (2005).  Plaintiffs now seek attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## DISCUSSION

In civil rights actions, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).  Although the decision to award a fee is discretionary, "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (quoting S.Rep. No. 94-1011 at. 4 (1976).  Here, Defendants do not contest that Plaintiffs are prevailing parties, nor do they argue that special circumstances render an award of fees unjust.  Rather, Defendants take issue with the reasonableness of the fee request submitted by Plaintiffs.

In determining the amount of attorney's fees to award, the court begins by calculating the lodestar figure.  The lodestar figure is calculated by multiplying the number of reasonable hours expended times a reasonable rate.  To determine the reasonable rate and reasonable number of hours to use in calculating the lodestar, a district court's analysis must strictly follow the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as modified by *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The *Johnson* factors are: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal services; (4) the attorney's opportunity costs in pursuing the litigation; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances;

(8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *See Daly v. Hill,* 790 F.2d 1071, 1075 n. 2 (4th Cir. 1986). The court will therefore consider these factors to determine the reasonable number of hours and the reasonable rate to be used in this case, *see id.* at 1078, both of which Defendants contest.

    **A.**    **Reasonable Number of Hours**

To establish the number of hours reasonably expended, Plaintiffs must submit evidence supporting the hours worked . . . ." *Hensley,* 461 U.S. at 433. The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *Id.* at 434. In this case, Plaintiffs' attorneys have presented billing records showing that they spent, in total, 440.15 hours prosecuting Plaintiffs' claim. In evaluating whether these hours were reasonably expended, the Court finds most relevant the first, third, and eighth *Johnson* factors: (1) the time and labor required, (3) the skill required properly to perform the legal services, and (8) the amount involved and the results obtained. Defendants' objections to these hours also generally fall within these categories.

According to Defendants, Plaintiffs' counsels' hours should be reduced because the time claimed contains "excessive and duplicative attorney time." (Def. Return at 3). As an example, Defendants cite the time Plaintiffs' counsel spent on their Brief in Opposition to the Petition for Writ of Certiorari. Plaintiffs' counsel Evans, Flaxman, and Lee report a total of 21.5, 13.2, and 42.25 hours, respectively, in work on this opposition memoranda. Defendants point out that this

totals approximately 76.95 hours. In Defendants' eyes, the devotion of nearly two forty-hour work weeks to the preparation of a "slightly more than sixteen page opposition brief" is particularly excessive, and should be eliminated or reduced. (Def. Return at 2-3).

More specifically, Defendants challenge the time Mr. Evans spent preparing this brief. In Defendants' opinion, "[c]learly the involvement of Mr. Evans in that Opposition brief was unnecessary." (Def. Return at 3). Defendants' position is that Mr. Evans did not have a significant role in writing the memoranda at the district court or Fourth Circuit level, and thus, "no reason existed for Mr. Evans to shift from a primarily consultative role to devoting 21.5 hours of time to the Opposition brief on Certiorari." *Id.* Additionally, Defendants argue that 2.75 hours time spent reviewing Defendants' Motion for Summary Judgment in the district court proceedings should be disallowed because, in Defendants' opinion, this amount of time is too much to review a memorandum that was "only 35 pages long." (Def. Return at 4).

The court disagrees with Defendants' arguments regarding Mr. Evans' time. First, Mr. Evans has submitted detailed billing records that thoroughly document all of the activities he performed over the nearly four year course of this litigation. The fact that Mr. Evans became more involved at the point when Defendants petitioned for certiorari is readily explicable, as Mr. Evans is a particularly skilled litigator who has served as the Senior Director of the Public Policy Litigation and Law Department of Planned Parenthood since 1983. (Evans Decl. at ¶ 3). Of particular relevance to Defendants' challenge in this case, Mr. Evans has served as lead or co-counsel in nearly all of the cases in the United States Supreme Court concerning reproductive rights in the last decade. *Id.* Accordingly, it is not surprising, nor is it unreasonable, that Mr. Evans would devote a significant number of hours (21.5) to opposing the Petition for Certiorari

filed by Defendants.[1] Moreover, given his senior status, it is similarly not unreasonable that Mr. Evans would spend 2.75 hours reviewing the work of more junior attorneys on the motions at the district court level. The issues presented in this case were difficult questions of constitutional law, and Mr. Evans helped achieve a resounding victory for his client at the district court, Fourth Circuit, and Supreme Court levels. On the whole, after a thorough consideration of the *Johnson* factors, the court believes Mr. Evans' hours need not be reduced, as they are clearly reasonable.[2]

---

[1] The court is not convinced that the eventual length of the opposition memoranda is in any way correlated to the number of hours Mr. Evans devoted to the process of opposing Defendants' petition for certiorari. Mr. Evans' hours were spent in meetings regarding the opposition memoranda, and writing and editing the memoranda. Given Mr. Evans' skill and experience as a Supreme Court litigator and the complexity of the issues involved, 21.5 hours is certainly a reasonable amount of time to spend, irregardless of whether the opposition memoranda only ends up constituting sixteen pages.

Similarly, the court does not agree that Mr. Evans' documented 2.75 hours reviewing a motion for summary judgment that was "only 35 pages long" should be reduced as unreasonable. Again, the length of a memoranda simply does not mean that the issues contained therein require little time. Moreover, even if the length of the memoranda was somehow correlated with the time required to review it, a thirty-five page memoranda is of significant length and could certainly require 2.75 hours of review, particularly given the constitutional issues involved in the matter *sub judice*.

[2] To the extent that Defendants attempt to challenge the hours spent by Ms. Flaxman and Ms. Lee on the opposition memoranda, the court similarly finds their hours reasonable. Ms. Flaxman and Ms. Lee spent 13.2 and 42.25, respectively, hours on this opposition. Both are skilled constitutional litigators, and opposing a petition for a certiorari to the Supreme Court is obviously requires great skill, time, and labor. Moreover, Plaintiffs in this case have used a minimal number of lawyers (3) to staff a lengthy and complicated case.

Defendants have not provided any concrete reasons why Ms. Flaxman and Ms. Lee's time should be reduced, except that, coupled with Mr. Evans' hours, their hours added up to a total of "nearly two forty-hour work weeks" being "devoted to the preparation of a slightly more than sixteen page opposition brief to the Petition for Certiorari." (Def. Return at 2-3). For the reasons stated above with respect to Mr. Evans, the court finds this time to be reasonable given the complexity of the issues, the skill of the litigators involved, and the success each of these lawyers obtained for their client.

### B.   Reasonable Hourly Rate - The Applicability of Local Rates

The court must now determine a reasonable hourly rate for Plaintiffs' counsel. *See Hensley,* 461 U.S. at 433. Defendants argue that local rates should control, not the New York rates proposed by Plaintiffs. In *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir.1988), the Fourth Circuit observed that the community in which the court sits is the first place to look to in evaluating the prevailing market rate. "Rates charged by attorneys in other cities, however, may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 179 (4th Cir. 1994), *quoting National Wildlife,* 859 F.2d at 317.

In this case both criteria are satisfied. The litigated issues include complicated First Amendment questions, including the doctrines of government speech and unbridled discretion, in the context of specialty license plates. As Plaintiffs note, a number of other constitutional issues arose throughout the litigation as well, including standing, ripeness, unconstitutional conditions on government funding, due process, and equal protection. Finally. a number of these issues were particular to the specialized field of reproductive rights. As Plaintiffs' counsel are specialists in these fields and regularly litigate cases involving the questions at issue, their rates need not be adjusted downward. *See Rum Creek*, 31 F.3d at 179 (reversing the district court's downward adjustment of out-of-town counsel's rates when the issues "included questions of preemption and constitutional law" and out-of-town counsel were "concededly well-experienced in the type of matters involved.").

Moreover, here, Plaintiffs clearly made a "reasonable" choice in choosing counsel.

Plaintiffs' counsel are the regular counsel for Planned Parenthood and were willing to forego compensation temporarily, if not permanently. *Cf. National Wildlife,* 859 F.2d at 317-18 (holding that Washington, DC rates were proper because local counsel was unable to take the case, and unwilling to forego compensation). Accordingly, the requirements of *National Wildlife* are satisfied, and this court declines to reduce the rates charged to local rates.

The court's inquiry does not end here. The court must now determine whether Plaintiffs' counsels' proposed hourly rates are reasonable - that is, "that the requested rate [] [is] in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). Here, at least three of the *Johnson* factors - the customary fee; the attorney's experience, reputation and ability; and awards in similar cases - are relevant to determining the prevailing market rate for the services rendered by all three of Plaintiffs' counsel. The court addresses each counsel's situation in turn.

### 1. Mr. Evans

Plaintiffs' counsel Evans documents that he spent 54.75 hours on this case at a rate of $475 per hour. In support of the reasonableness of this rate, Plaintiffs have first submitted the Declaration of Charles S. Sims, a senior partner at a New York law firm who has training and experience highly relevant to the practice of public interest law, including complex constitutional issues such as the one at bar, in New York. Sims avers that Plaintiffs' counsels' rates are "very conservative in New York City." (Sims Decl. at ¶ 6). With respect to Mr. Evans, Sims advises that were Evans a partner at a New York firm, his hourly rate would be $575-$650. Sims also details Evans' skills which render him a particularly excellent advocate for this case:

Evans "has dedicated his practice exclusively to defending constitutional and civil rights since joining [Planned Parenthood] in 1983, and has participated as lead or cooperating counsel in nearly all the cases in the U.S. Supreme Court concerning reproductive rights in the last two decades." *See id.* at ¶ 7.

Second, Plaintiffs have submitted Evans' own Declaration, in which he details his voluminous experience with the questions at issue, and affirms that the rate of $575-650 would be reasonable given his experience. (Evans Decl.). Based on this evidence, the court finds Evans' requested hourly rate of $475 to be reasonable.

### 2.    Ms. Flaxman

In support of Ms. Flaxman's rate of $350 per hour, Plaintiffs also offer Mr. Sims's Declaration. Ms. Flaxman received a J.D. from Yale Law School in 1996, clerked on the United States Court of Appeals for the Third Circuit, and served as an associate at two major national law firms, where she worked on a number of constitutional and civil rights cases. (Sims Decl. at ¶ 8). Since 2004, Ms. Flaxman has acted as a consultant to Planned Parenthood attorneys. According to Mr. Sims, Ms. Flaxman would be entitled to a billing rate of $445-$475 at a New York law firm "[g]iven her years of experience and specialization." *Id.*

In Ms. Flaxman's Declaration, she details her experience. Ms. Flaxman served as Executive Editor of *Yale Law Journal*; clerked on the Third Circuit Court of Appeals; worked as cooperating counsel with the American Civil Liberties Union Reproductive Freedom Project while at Wilmer, Cutler, and Pickering; and prepared an amicus brief in a major reproductive rights case that the Supreme Court heard in 2000. (Flaxman Decl. at ¶ 2-4). Ms. Flaxman has a wealth of experience litigating reproductive rights cases in federal and state court since she

8

joined Planned Parenthood. (Flaxman Decl. at ¶ 5). Given her wealth of experience and prevailing rate for an attorney of her stature in New York, the court believes her requested rate of $350 per hour is reasonable.

### 3.     Ms. Lee

Like the other two attorneys, Ms. Lee submits Mr. Sims's Declaration and her own Declaration in support of her hourly rate of $315. Mr. Sims affirms that Ms. Lee would be entitled to a billing rate of $420-$455 at a New York firm. Ms. Lee's relevant experience includes the following: she is a 1997 graduate of Columbia Law School, where she was a Harlan Fiske Stone Scholar; she served as an associate at Cravath, Swaine, and Moore in New York for two years; and she has served as lead or cooperating counsel in a number of challenges to the constitutionality of state statutes regulating reproductive rights since joining Planned Parenthood in 2001. As with the other attorneys, given Ms. Lee's credentials and experience, and the prevailing New York rates, the court believes her requested fee of $315 per hour is reasonable.

In addition to the evidence proffered by the parties, the court also notes that awards to attorneys in similar cases are relevant to a determination of a reasonable fee for counsels' services. In *Santa Fe Natural Tobacco v. Spitzer,* 2002 WL 498631 at *6-8 (S.D.N.Y. March 29, 2002), the Southern District of New York awarded an attorney with thirty years experience, much like Mr. Evans, a $500 per hour rate. *See also Berlinsky v. Alcatel Alsthom Compagnie,* 970 F.Supp. 348, 351 (S.D. N.Y. 1997) (eight years ago, awarding a senior partner a $495 rate; a senior associate a $365 rate, and a junior associate a $265 rate).

### C.     Total Reasonable Attorney's Fees

Accordingly, based on the discussion above, the court finds that the Plaintiffs are entitled

to attorney's fees in the amount of $154,505.[3] The court has reviewed Plaintiffs' submitted costs, and finds that the requested amount of $3,305.06 is also reasonable.[4] Accordingly, Plaintiffs are entitled to $157,810.06 in fees and costs.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiffs' Motion for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988 is hereby **GRANTED** in the amount of $157,810.06.

**AND IT IS SO ORDERED.**

**s/ Patrick Michael Duffy**
**PATRICK MICHAEL DUFFY**
**UNITED STATES DISTRICT JUDGE**

**Charleston, SC**
**June 9, 2005**

---

[3]  This figure is calculated as follows:
Attorney Roger Evans: 54.75 hours at $475/hour = $26,006
Attorney Carrie Flaxman: 202.8 hours at $350/hour = $70,980
Attorney Donna Lee: 182.6 hours at $315/hour = $57,519
The sum of $26,006, $70,890, and $57,519 is $154,505

[4]  Defendants do not object to Plaintiffs' requests for costs.